DeGROFF *vs.* THE AMERICAN LINEN THREAD COMPANY.

The defendants, a manufacturing corporation, having a store of goods, agreed with the plaintiff to sell the same to him for a specified sum, a part of which was to be paid in cash, and the remainder in six, nine and twelve months, with interest. It was also agreed that if the trustees of the defendants, then in office, should, within a specified time, cease to have the management of the affairs of the defendants, and, by reason thereof, the general trade of the hands in the employ of the company should be diverted from the plaintiff's store, and the plaintiff should sustain damage thereby, the defendants should pay him the sum of $300, or discount that amount from any sum the plaintiff might owe the defendants. At the time of making this agreement, the affairs of the defendants were managed by a board of five trustees. Soon afterwards three of the trustees resigned, and other persons were appointed in their places; one of whom was a merchant occupying a store adjoining that of the plaintiff, and who became the treasurer of the defendants. After his appointment, much of the trade of the hands in the defendants' employ went to his store. In an action to recover the $300 mentioned in the agreement, the

DeGroff v. American Linen Thread Company.

plaintiff alleged that a majority of the trustees in office when he made his purchase, had ceased to have the management of the affairs of the company, and that by reason thereof the general trade of the hands in the employ of the company had been diverted from his store, and that he had thereby sustained damage.

*Held* that the agreement was valid and binding; and that it should have been submitted to the jury to determine whether the general trade of the hands had been diverted from the plaintiff's store; and if it had, then whether such diversion had taken place in consequence of the change in the board of trustees, and whether the plaintiff had sustained damage thereby. And that if the verdict were in favor of the plaintiff on all of these questions, he would be entitled to recover the amount claimed as a deduction from the price of the goods.

MOTION for a new trial. The defendants are a manufacturing corporation, organized for the purpose of manufacturing linen goods, &c. Having a store of goods which they had been engaged in retailing to customers, and particularly to those employed in their manufacturing establishment, on the 29th of January, 1853, they agreed with the plaintiff to sell out to him their entire stock in trade, for $3445, of which $1000 was to be paid in cash, and the remainder in six, nine and twelve months, with interest. Negotiable notes were to be given for these payments, secured by mortgage. It was also agreed, that if the trustees of the defendants, then in office, should, within one year from the 1st of March then next, cease to have the management of the affairs of the defendants, and, by reason thereof, the general trade of the hands in the employ of the company should be diverted from the plaintiff's store, and the plaintiff should sustain damage thereby, the defendants should pay the plaintiff the sum of $300, or discount that amount from any sum the plaintiff might owe the defendants.

The sale was consummated about the 1st of March, 1853. The goods were delivered to the plaintiff. The cash payment of $1000 was made. The notes and security for the balance were executed and delivered, and an agreement to the effect above stated, on the part of the defendants, was signed by three of their trustees. The affairs of the defendants were managed by a board of five trustees. On the 28th of April,

DeGroff *v.* American Linen Thread Company.

three of the trustees resigned, and other persons were appointed in their place. In August following, this action was brought, to recover the $300 mentioned in the agreement made with the plaintiff by the defendants. The plaintiff alleged that a *majority* of the trustees in office when he made his purchase, had ceased to have the management of the affairs of the company, and that, by reason thereof, the general trade of the hands in the employ of the company had been diverted from his store, and that he had thereby sustained damage. It was further alleged, that the defendants had refused to pay the $300 mentioned in their agreement, or to discount that amount from any sum or sums which the plaintiff owed the defendants. The answer of the defendants was a general denial of the allegations in the complaint. The cause was tried at the Saratoga circuit, in June, 1855, before Mr. Justice JAMES. On the trial, the plaintiff proved the transaction, substantially as set forth in the complaint; that at the time he purchased the goods the defendants had in their employ about 100 hands; that three of the trustees resigned in April, and among the new trustees appointed, was Abiram Fellows, who was a merchant occupying a store adjoining to that of the plaintiff; that Fellows became the treasurer of the defendants, and after that, much of the trade of the hands in the defendants' employ went to his store.

The plaintiff having rested, the defendants moved for a nonsuit. The principal grounds upon which the motion was founded were, 1. That the plaintiff had proved that but three out of the five trustees had ceased to have the management of the defendants' affairs. 2. That it had not been proved that the *general trade* of the hands had been diverted from the plaintiff's store in *consequence* of the resignation of the three trustees and the election of three others in their stead, or that such trade had been diverted at all. 3. That the defendants had not the capacity to make such a contract as that upon which the action is founded. 4. That the trustees, if they had power to sell the goods, had not the power to sell them with a condition that they should be retained in office beyond the period for which they were elected, and subjecting the defendants to dam-

age if they should not be so continued.   5. That the agreement
upon which the plaintiff sought to recover, was void as against
public policy.   The court decided that, under the evidence and
pleadings, the plaintiff was not entitled to recover, and directed
a nonsuit to be entered.   An order was made that the motion
for a new trial, upon exceptions, be heard, in the first instance
at a general term.

*E. F. Bullard*, for the plaintiff.

*D. Wright*, for the defendants.

*By the Court*, HARRIS, J.   The agreement upon which this
action is brought, is to be treated as a part of the contract for
the sale of the defendants' stock in trade to the plaintiff.   One
inducement for the plaintiff to make the purchase, obviously
was, that he might thereby secure the custom and patronage of
the defendants' establishment.   He was willing to have the price
depend upon this contingency.   If he could have the benefit of
the trade he sought, he could afford to pay a larger price for
the goods.   He accordingly agreed to pay $300 more in the one
case than in the other, and the defendants stipulated that, as
the plaintiff had paid and secured the whole amount, they would
refund the $300, or give him credit therefor, if the contingency
contemplated by the agreement should happen.   To the valid-
ity of such an agreement I can perceive no objection.

The condition upon which the $300 was to be refunded or
credited to the plaintiff was, not only that he should lose the
general trade of the hands in the employ of the defendants, but
that he should lose it by reason of a change in the administra-
tion of the affairs of the company.   Upon this question the
plaintiff gave some evidence—enough, I think, to carry the case
to the jury.   It should have been submitted to them to deter-
mine, whether the general trade of the hands had been diverted
from the plaintiff's store, and if it had, then, whether such diver-
sion had taken place in consequence of the change in the board
of trustees, and whether the plaintiff had sustained damage

thereby. If the verdict of the jury had been in favor of the plaintiff upon all these questions, as I think it might have been, I do not see why the plaintiff should not have recovered the amount claimed as a deduction from the price of the goods.

The defendants are not in a position to shield themselves from liability upon their contract, upon the ground that they had transcended their corporate power by engaging in the purchase and sale of goods. It may be that they had, but if so, having entered into the contract with the plaintiff and received from him the consideration for the goods, they are not at liberty now to repudiate that portion of the contract which imposes an obligation upon them. (*See Steam Nav. Co.* v. *Weed,* 17 *Barb.* 378, *and cases there cited.*) I am of opinion that a new trial should be granted.(*a.*)

(*a*) This case has since been decided the other way, in the 4th District.